**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| **DOMINIC MATTHEWS** | * | |
| | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No.: SAG-23-01975** |
| **v.** | * | |
| | * | |
| **DEPARTMENT OF PUBLIC SAFETY** | * | |
| **AND CORRECTIONAL SERVICES, *et al.*** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

<u>**MEMORANDUM OPINION**</u>

Plaintiff Dominic Matthews ("Plaintiff") brings this action against the Maryland Department of Public Safety and Correctional Services ("DPSCS") and Maryland Correctional Enterprises ("MCE") as well as Carolyn J. Scruggs, Michele C. Gardner, William Bailey, Monika L. Brittingham, Amy Gragg, Diana Littleton, Carlos D. Bivens, Todd A. Hull, Laura Golliday, and Kathryn Gorsuch (collectively, "Individual Defendants," and with DPSCS and MCE, "Defendants") for claims arising out of his incarceration. ECF 86-1. Defendants jointly filed a partial motion to dismiss, or in the alternative, partial motion for summary judgment, ECF 92, which Plaintiff opposed, ECF 100. Defendants then filed a reply. ECF 105. This Court has reviewed the filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons explained below, Defendants' motion will be granted in part and denied in part.

**I.    BACKGROUND**

The following facts are derived from Plaintiff's complaint, ECF 86-1, and are assumed to be true for purposes of this motion.

At all times pertinent to this action, Plaintiff has been in the custody of DPSCS. *Id.* at ¶ 1. Plaintiff is legally blind and has severe ataxia, a neurological condition that impairs his muscle coordination, balance, and movement control. *Id.* at ¶¶ 3–4.

From August, 2013 until May, 2024, Plaintiff was incarcerated at Eastern Correctional Institution ("ECI"). *Id.* at ¶¶ 1, 37. While at ECI, Plaintiff was diagnosed with ataxia. *Id.* at ¶ 48. He was provided a walker to assist him with mobility, but the walker was broken. *Id.* He requested a new walker several times but has never received one. *Id.* Plaintiff was eventually moved to the medical tier of ECI, which featured showers with safety bars. *Id.* at ¶ 49. He requested accommodations for his cell, including a "high-tower" toilet that reduces the risk of falling during use and safety bars. *Id.* at ¶¶ 49, 71. Although ECI eventually installed safety bars in his cell, they were "very small" and not compliant with the Americans with Disabilities Act ("ADA"). *Id.*

Under certain circumstances, a person incarcerated within DPSCS may earn diminution credits, which reduce the person's term of incarceration. *Id.* at ¶ 27. Satisfactory performance of assigned work allows an inmate to earn diminution credits. *Id.* at ¶ 28. Performance of work that is designated as a "special project" allows an inmate to earn additional diminution credits. *Id.* Work for MCE, the vocational training arm of DPSCS, is designated as a special project. *Id.* at ¶ 30.

While at ECI, Plaintiff satisfactorily performed several jobs to which he was assigned, including the sanitation work detail. *Id.* at ¶¶ 39, 41, 45. Plaintiff and most other inmates on the sanitation work detail had no job responsibilities but still earned diminution credit for their work assignment. *Id.* at ¶ 45. In March, 2020, however, medical "declassified" Plaintiff because of his disabilities, and he was unassigned from the sanitation work detail. *Id.* at ¶¶ 46–47. His work classification remained "Medically Unassigned" for nearly a year. *Id.* at ¶ 47. In 2021, he was again classified as "Medically Unassigned" for another two years. *Id.* at ¶¶ 51–52.

During that time, however, Plaintiff interviewed for a position with the MCE textile plant. *Id.* at ¶ 56. The correctional officer providing security at the plant informed Plaintiff that he could not use his walker in the facility. *Id.* at ¶ 57. Without his walker, Plaintiff "had to hold on and hug the wall to reach the interview room." *Id.* at ¶ 56. Defendant Littleton, the then-Plant Manager who conducted the interview, later informed Plaintiff that the textile plant did not have any jobs available that Plaintiff could perform with his disabilities. *Id.* at ¶¶ 56–57.

Plaintiff was subsequently reassigned to the sanitation work detail and, like most inmates on the detail, had no job responsibilities but earned diminution credits for his assignment. *Id.* at ¶ 59.

In May, 2024, Plaintiff was transferred to Roxbury Correctional Institution ("RCI"). *Id.* at ¶ 63. Plaintiff alleges that although officials claimed at the time that they pursued the transfer to better accommodate his vision impairment, they actually did so to avoid accommodating his needs at ECI and to moot his claims regarding ECI. *Id.* at ¶¶ 64, 70. Plaintiff did not receive any additional accommodations for his vision impairment at RCI and received fewer accommodations for his mobility impairment. *Id.* at ¶ 71. The shower facilities at RCI lacked any safety bars and featured a smooth floor that he alleges presented a falling risk when wet. *Id.* at ¶ 72. And his cell at RCI was too small to allow him to ambulate within it using his walker, and it lacked any safety bars or a "high-tower" toilet. *Id.* at ¶ 71.

Plaintiff filed a grievance regarding the accessibility issues that he allegedly faced at RCI, and, in response to that grievance, Defendant Bivens, the RCI Warden, acknowledged that RCI did not meet ADA requirements. *Id.* at ¶¶ 23, 73. Defendant Bivens stated that "the facility is aware of your needs and is actively looking at ways to accommodate you or to find you adequate

housing," but Plaintiff alleges that Defendant Bivens never offered any accommodations. *Id.* at ¶¶ 73, 79.

Following another grievance that Plaintiff filed regarding RCI's lack of accessibility, Plaintiff was transferred to the infirmary unit at Maryland Correctional Institution – Hagerstown ("MCI-H") and was informed that he would need to remain there permanently. *Id.* at ¶¶ 75–76. At MCI-H, Plaintiff did not have access to his glasses, walker, assistive reading device, basic hygiene items, use of a telephone, or his personal property. *Id.* at ¶ 76. Because Plaintiff knew that incurring a disciplinary infraction would require his transfer from the infirmary unit, he broke a sprinkler head. *Id.* at ¶ 78. As a result, he was transferred back to RCI and lost seventy-five diminution credits. *Id.*

Following his return to RCI, Plaintiff filed a grievance regarding his lack of opportunities to earn diminution credits. *Id.* at ¶ 80. Defendant Hull, Assistant Warden of RCI, determined that Plaintiff was ineligible for any opportunities to earn diminution credits in part because medical had opined that due to his use of a walker, he could not safely perform the duties of any jobs, including food service, that would earn him ten diminution credits per month. *Id.* Plaintiff, however, was later assigned to the sanitation work detail again and then to a food service position. *Id.* at ¶¶ 81, 83–84. The sanitation work detail again involved no job responsibilities, while Plaintiff was able to perform all of the responsibilities of his food service position. *Id.* at ¶¶ 83–84.

In May, 2025, Plaintiff was transferred to Western Correctional Institution ("WCI"). *Id.* at ¶ 94. Defendant Gardner, the DPSCS ADA Compliance Coordinator, Defendant Gorsuch, a then-Case Manager Supervisor at RCI, and Defendant Golliday, the then-Assistant Warden of RCI, worked to effectuate the transfer. *Id.* at ¶¶ 18, 25–26, 87–94. They described the transfer as

necessary to accommodate Plaintiff's need for use of a wheelchair at all times. *Id.* at ¶¶ 87–94. Plaintiff does not rely on a wheelchair for mobility, however, and had never requested to use one outside of circumstances in which he must travel a long distance. *Id.* at ¶ 86.

Throughout these events, Plaintiff filed several complaints and grievances, most of which were allegedly ignored or summarily denied. *Id.* at ¶ 62

Plaintiff now brings six claims. Count I alleges a discrimination claim under the ADA against DPSCS and MCE. *Id.* at ¶¶ 97–111. Count II alleges an interference claim under the ADA against DPSCS and MCE. *Id.* at ¶¶ 112–22. Count III alleges a retaliation claim under the ADA against DPSCS and MCE. *Id.* at ¶¶ 123–29. Count IV alleges a discrimination claim under the Rehabilitation Act against DPSCS and MCE. *Id.* at ¶¶ 130–37. Count V alleges a violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983 against the Individual Defendants. *Id.* at ¶¶ 138–48. Count VI alleges a violation of the Cruel and Unusual Punishment Clause of the Eighth Amendment pursuant to § 1983 against all of the Individual Defendants except Defendant Littleton. *Id.* at ¶¶ 149–55. Defendant Scruggs, the Secretary of DPSCS, is sued in her official capacity only. *Id.* at ¶ 17. Defendant Littleton and Defendant Hull are sued in their individual capacities only. *Id.* at ¶¶ 22, 24. Each of the other Individual Defendants are sued in both their individual and official capacities. *Id.* at ¶¶ 18–21, 23, 25–26. Plaintiff seeks prospective injunctive relief, restoration of the diminution credits lost due to the disciplinary infraction he incurred at MCI-H, an award of diminution credits that he lacked the opportunity to earn through work allegedly due to Defendants' discrimination, compensatory damages, and punitive damages. *Id.* at ¶ 155.

## II.    LEGAL STANDARDS

A defendant is permitted to test the legal sufficiency of a complaint by way of a motion to dismiss. *See, e.g.*, *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015). But if a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555.

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Defendants' motion is styled as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431,

436–37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible if two requirements are satisfied. *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). First, the plaintiff must have "actual notice" that the motion may be disposed of as one for summary judgment. *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. *Id.* Second, the parties must have had a reasonable opportunity for discovery. *Greater Balt. Ctr. for Pregnancy Concerns*, 721 F.3d at 281. To demonstrate the lack of a reasonable opportunity for discovery, the nonmovant ordinarily must file an affidavit or declaration pursuant to Rule 56(d) that explains the "specified reasons" that "it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d).

## III.  DISCUSSION

This Court must first determine whether to convert Defendants' motion into a partial motion for summary judgment under Rule 12(d). Defendants expressly captioned their motion in the alternative such that Plaintiff was on notice that conversion could occur. *See* ECF 92. Plaintiff's counsel filed an affidavit pursuant to Rule 56(d), however, explaining the ways in which Plaintiff has not yet had an adequate opportunity for discovery. ECF 99-1. Plaintiff's counsel explains that the fact discovery deadline had not yet passed and Plaintiff has yet to receive discovery on several specified issues, including issues pertinent to Defendants' motion. *Id.* Accordingly, this Court concludes that Plaintiff has demonstrated that he has not yet had a reasonable opportunity for discovery such that conversion under Rule 12(d) would be inappropriate. This Court will therefore

construe Defendants' motion as a partial motion to dismiss and will address each of Defendants' purported grounds for dismissal in turn.

####### A. Personal Participation

Defendants argue that Plaintiff has failed to allege the personal participation of Defendants Scruggs, Brittingham, Gardner, Bivens, Hull, Golliday, and Gorsuch. Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation such that a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There must exist an "affirmative causal connection" between the defendant's acts or omissions and the alleged injury. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Swint v. City of Wadley*, 51 F.3d 988, 999 (11th Cir. 1995)). Personal review and approval of decisions regarding the plaintiff may support liability. *See Latson v. Clarke*, 249 F. Supp. 3d 838, 858 (W.D. Va. 2017). Communication of a decision made by another, however, will not suffice for liability. *Wilcox*, 877 F.3d at 170.

The doctrine of respondeat superior does not apply in § 1983 claims. *Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004). Liability of supervisory officials under § 1983 "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response

to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Broad allegations of supervisory authority alone do not suffice. *See Jordan v. Seltzer*, Civ. No. GLR-21-3048, 2023 WL 6125928, at *7 (D. Md. Sept. 18, 2023) (concluding that allegations such as that the Secretary of DPSCS was "responsible for the overall operations of DPSCS" were "conclusory and divorced from any factual allegations" that would allow an inference that the Secretary had actual or constructive knowledge of misconduct).

Plaintiff has failed to allege the personal participation of Defendant Scruggs. As Defendants correctly note, the complaint makes no mention of Defendant Scruggs outside of the "Parties" section. ECF 86-1 at ¶ 17. The paragraph in that section concerning Defendant Scruggs contains no allegations about Plaintiff and is limited to a broad description of Defendant Scruggs's job responsibilities. *Id.* It alleges that Defendant Scruggs, as "Secretary of DPSCS is responsible for the administration of the Department." As in *Jordan*, this nearly identical allegation of authority alone is "conclusory and divorced from any factual allegations" regarding Plaintiff and cannot support an inference of personal participation.

Plaintiff has also failed to allege the personal participation of Defendant Brittingham, the Assistant Warden of ECI. *Id.* at ¶ 20. Again, the complaint makes no mention of Defendant Brittingham outside of the "Parties" section, and that section primarily consists of a general description of her position and responsibilities. *Id.* The only allegation it makes regarding Plaintiff is that Defendant Brittingham "was made personally aware of the discrimination Mr. Matthews suffered as a result of his disabilities." *Id.* This single allegation does not suffice to state a claim against Defendant Brittingham. The complaint includes this allegation verbatim in its description

of nearly every Defendant and fails to allege any act or omission in response to Defendant Brittingham's alleged awareness that has a causal connection to Plaintiff's alleged injuries.

Although Plaintiff makes far more specific allegations regarding Defendant Gardner, they do not suffice to allege that she personally participated in the alleged constitutional violations. Plaintiff alleges that Defendant Gardner, as the ADA Compliance Coordinator, must approve all final denials of requests for accommodations. *Id.* at ¶ 18. Although Plaintiff alleges that most of his requests were ignored or summarily denied, it is not clear that any requests ever reached the formal final denial stage that would require Defendant Gardner's approval. *See id.* at ¶ 62. Furthermore, most of the allegations relating to her involve her receipt of communications from others. *See id.* at ¶¶ 54–55, 68, 80. These allegations support her knowledge of the alleged violations but do not allege any act or omission by her that caused the violations. Finally, although the complaint alleges her involvement in Plaintiff's transfer to WCI, neither the Equal Protection claim nor the Eighth Amendment claim allege that Plaintiff has suffered any violations of those provisions at WCI or that his transfer there constituted such a violation. *Id.* at ¶¶ 92–94.

For the same reasons, the complaint fails to allege the personal participation of Defendant Gorsuch and Defendant Golliday. Defendant Golliday allegedly received communication regarding the alleged accessibility issues with RCI and inquired whether Plaintiff could be transferred to a different facility. *Id.* at ¶¶ 87, 89. Defendant Gorsuch allegedly received that same communication regarding RCI, stated that Plaintiff could be transferred to a different facility, and made requests to effectuate the transfer. *Id.* at ¶¶ 87, 89–90. The complaint thus fails to allege acts or omissions by Defendants Gorsuch and Golliday that caused the alleged violations.

However, Plaintiff has alleged personal participation by Defendant Bivens. In response to a grievance filed by Plaintiff regarding RCI's accessibility, Defendant Bivens acknowledged that

RCI did not meet ADA requirements. *Id.* at ¶ 73; ECF 85-28; ECF 85-29. Although he stated that "the facility is aware of your needs and is actively looking at ways to accommodate you or to find you adequate housing," ECF 85-29, Plaintiff alleges that Defendant Bivens offered no accommodations. ECF 86-1 at ¶ 79. Plaintiff has thus alleged that Defendant Bivens was aware of unlawful conditions *and* failed to adequately respond to them.

Plaintiff has also alleged sufficient personal participation by Defendant Hull. Plaintiff alleges that Defendant Hull determined that he was ineligible for opportunities to earn diminution credits because of his use of a walker because it was the "professional opinion" of "medical" that he could not safely perform the duties of any jobs, including food service, that would earn him ten diminution credits per month. *Id.* at ¶ 80; ECF 48-7. Drawing all reasonable inferences in Plaintiff's favor, this letter suggests that Defendant Hull did not merely communicate a decision from medical staff, but also independently decided that Plaintiff was ineligible for any jobs that would earn him that number of credits, particularly in light of the allegation that Plaintiff was assigned to a food service job a few months later notwithstanding the opinion of medical staff. ECF 86-1 at ¶ 84. Plaintiff has thus alleged personal participation by Defendant Hull in the decision to allegedly deny him access to work based on his disability.

Accordingly, this Court will dismiss the claims against Defendants Scruggs, Brittingham, Gardner, Golliday, and Gorsuch without prejudice.

B.  Official Capacity and Mootness

Defendants also argue that the Eleventh Amendment bars suit against the Individual Defendants in their official capacities and that Plaintiff may not seek injunctive relief because his claims are moot. This Court will address these two arguments together.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies, and departments are immune from citizen suits in federal court absent state consent or Congressional action. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Claims against state employees acting in their official capacities are also subject to Eleventh Amendment immunity because a suit against the state actor is tantamount to a suit against the state itself. *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985). However, under the *Ex Parte Young* exception, a plaintiff may state a valid claim for injunctive relief against state employees sued in their official capacity. *Indus. Servs. Grp., Inc. v. Dobson*, 68 F.4th 155, 163 (4th Cir. 2023) (citing *Ex Parte Young*, 209 U.S. 123, 160 (1908)).

Defendants argue that the *Ex Parte Young* exception does not apply to Plaintiff's claims for injunctive relief against the Defendants sued in their official capacities because his transfer to WCI mooted those claims. Plaintiff, in turn, argues that *Ex Parte Young* permits his claims for injunctive relief because the capable of repetition yet evading review and voluntary cessation exceptions to mootness apply. *See Gilliam v. Dep't of Pub. Safety and Corr. Servs.*, Civ. No. MJM-23-1047, 2024 WL 5186706, at *8–9 (D. Md. Dec. 20, 2024) (analyzing whether the capable of repetition yet evading review exception, and thus *Ex Parte Young*, applied).

A case becomes moot when the parties no longer possess a cognizable interest in the outcome. *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 323 (4th Cir. 2021). An individual's transfer from one prison generally moots his claims for injunctive relief as to incarceration there. *Rendelman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009). A court may still grant such relief, however, if a constitutional violation is capable of repetition yet evading review. *See Withers v. Levine*, 615 F.2d 158, 160–61 (4th Cir. 1980) (declining to dismiss claims related to housing on a particular tier as moot because they were capable of repetition yet evading review when plaintiff

had twice been transferred to that tier but for no more than ninety days at a time); *see also Turner v. Clelland*, 1:15CV947, 2016 WL 6997500, at *13–14 (M.D.N.C. Nov. 30, 2016) (concluding that claims related to one prison were moot following transfer because return there was unlikely when plaintiff had never served time at the same prison twice and faced only two more years of incarceration).

Although Plaintiff allegedly experienced violations of his rights at two prisons, he has alleged no violations at his current facility, an indication that Defendants will not repeatedly violate his rights at each facility and transfer him to moot his claims. Furthermore, nothing suggests that Plaintiff will be transferred back to ECI or RCI, where he allegedly experienced the violations of his rights. Like in *Turner* and unlike in *Withers*, Plaintiff has never served time at the same prison twice, and, like in *Turner*, his release date is only about two-and-a-half years away. ECF 86-1 at ¶ 61. Moreover, Plaintiff spent at least one year at both ECI and RCI, far longer than the at-most ninety days in *Withers* that the Fourth Circuit viewed as indicating the potential to evade review. This Court therefore concludes that the capable of repetition yet evading review exception does not apply to Plaintiff's claims.

Under the voluntary cessation exception to mootness, a defendant may not moot a case merely by ceasing its unlawful conduct after being sued. *Schaefer*, 2 F.4th at 323. Accordingly, a defendant asserting that "its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). Thus, a court should not dismiss a claim as moot "when a defendant retains the authority and capacity to repeat an alleged harm." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014).

Transfer from one prison may moot a plaintiff's claims for injunctive relief as to defendants employed at that prison but not defendants with authority over the correctional system as a whole. *See Fauconier v. Clarke*, 966 F.3d 265, 280–81 (4th Cir. 2020). In *Fauconier v. Clarke*, the plaintiff alleged that he had suffered discrimination in his work classification at one facility. *Id.* at 271. Shortly after his transfer to another facility, however, his work classification changed. *Id.* at 272. The Fourth Circuit concluded that the plaintiff's claims for injunctive relief against defendants employed at the prior facility were moot because those defendants no longer had authority over him. *Id.* at 280–81. The court declined to dismiss the injunctive claim against the correctional system's director, however, because the director oversaw polices that applied system wide. *Id.* at 281.

This Court concludes that the same distinction should apply here. The remaining Individual Defendants are all employed at either ECI or RCI and therefore have no authority over Plaintiff while he is incarcerated at WCI. In contrast, DPSCS continues to have authority over Plaintiff at WCI, and MCE could have authority over Plaintiff at WCI if he is assigned to one of their programs. Because DPSCS and MCE thus "retain[] the authority and capacity to repeat [the] alleged harm," voluntary cessation will not moot the claims for injunctive relief against them, but it will as to the Individual Defendants.

Accordingly, this Court will dismiss all claims against the Individual Defendants in their official capacities, but this Court further concludes that the claims for injunctive relief against DPSCS and MCE are not moot.

### C. Exhaustion

Defendants next argue that the Prison Litigation Reform Act ("PLRA") bars Count III because Plaintiff failed to exhaust administrative remedies regarding that claim. They contend that

14

Plaintiff never filed any grievances regarding his transfer from ECI to RCI, on which Count III is, in part, premised. The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Failure to exhaust under the PLRA is an affirmative defense that a defendant must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Importantly, however, an inmate need only exhaust "available" remedies. § 1997e(a). For a remedy to be "available," it must be able to provide some kind of relief. *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is not available if it operates as a dead end, *id.* at 643–44, such that "an inmate's only hope for relief is that officials act contrary to statute and regulation," *Younger v. Crowder*, 79 F.4th 373, 381 (4th Cir. 2023).

In *Younger v. Crowder*, the plaintiff filed a grievance regarding an officer's use of force but did not follow appropriate procedures to appeal the dismissal of the grievance. *Id.* at 376. The use of force was the subject of an Intelligence and Investigative Division investigation, and the

Fourth Circuit noted that under Maryland Code of Regulations § 12.02.28.11(B), an individual cannot successfully file a grievance regarding matters that are the subject of such an investigation. *Id.* at 380. The court therefore concluded that because any grievance filed regarding such a matter would be automatically dismissed as procedurally deficient, no administrative remedy was available under such circumstances and failure to exhaust did not bar the plaintiff's claims. *Id.* at 380–81.

Plaintiff asserts that no administrative remedy was available to him regarding Count III because § 12.02.28.11(B) similarly precludes the successful filing of a grievance on such a matter. Section 12.02.28.11(B) contemplates procedural dismissal on preliminary review of a grievance that is based on a matter not eligible for resolution under § 12.02.28.04. Section 12.02.28.04(b)(1), in turn, prohibits the filing of grievances to resolve matters concerning "[c]ase management recommendations and decisions." Md. Code Regs. § 12.02.28.04(b)(1). Thus, no administrative remedy is available to resolve matters concerning case management recommendations and decisions.

Plaintiff argues that transfers constitute case management decisions, citing the DPSCS Case Management Manual. *See* ECF 100-1. The Manual references case management several times in outlining procedures for transfers. For example, it states that "[i]n considering an inmate for transfer, case management staff shall take into account the inmate's programming needs, existing enemy alerts, and prior traffic history." *Id.* at 53. It further provides that "[t]he Director of Case Management shall in consultation with the Commissioner, or designee, make the final determination should any dispute arise regarding an inmate transfer" but that "[t]emporary transfers" may proceed without "case management action." *Id.* at 53–54. The Manual thus suggests that transfers, other than temporary transfers, require case management action and that case

management staff are the primary staff who make decisions regarding transfers. Defendants provided no response to this argument. This Court therefore concludes that non-temporary transfers, such as Plaintiff's transfer from ECI to RCI, constitute case management decisions, and because no administrative remedy is available for matters that constitute case management decisions, Defendants have not carried their burden to establish that Plaintiff's failure to exhaust bars Count III.

     D.  Counts II and III Against MCE

Defendants next argue that Counts II and III must be dismissed as to MCE because it has no role in reviewing grievances, determining housing assignments, or deciding accommodation requests.

Count II alleges interference under the ADA, which provides, in pertinent part, that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b). "Interfere" in this provision encompasses conduct beyond retaliation and "captures 'all practices which have the effect of interfering with the exercise of rights' under the ADA." *Kelly v. Town of Abingdon*, 90 F.4th 158, 171 (4th Cir. 2024) (quoting *Brown v. City of Tucson*, 335 F.3d 1181, 1191 (4th Cir. 2003)). It includes, for example, "coercing an individual to relinquish or forgo an accommodation to which he . . . is otherwise entitled." *Ayers v. Wal-Mart Assocs., Inc.*, No. 7:23-cv-00419, 2024 WL 4182706, at *12 (W.D. Va. Sept. 13, 2024) (quoting EEOC Enforcement Guidance on Retaliation and Related Issues, 2016 WL 4688886, at *26 (Aug. 25, 2016)). It is not so broad, however, that it encompasses all conduct that somehow hinders a member of a protected class. *Kelly*, 90 F.4th at 171.

Additionally, the Fourth Circuit has assumed without deciding that the plaintiff must allege that the defendant was motivated by discriminatory intent. *Id.* at 171 & n.9.

This Court agrees with Defendants that most of the allegations regarding interference do not relate to MCE. However, Plaintiff has alleged that when he interviewed for a position at the MCE textile plant, the correctional officer providing security informed him that he could not use his walker in the facility. ECF 86-1 at ¶ 57. Defendant Littleton, the plant manager who interviewed him, recorded in an email following the interview that Plaintiff "had to hold on and hug the wall to reach the interview room." ECF 86-15. Plaintiff has thus sufficiently alleged that MCE coerced him into relinquishing an accommodation, use of his walker, to which he was otherwise entitled. However, Plaintiff has failed to allege any facts suggesting discriminatory intent. This Court will therefore dismiss Count II against MCE without prejudice.

Count III alleges retaliation under the ADA, which provides, in pertinent part, that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Plaintiff has failed to allege retaliation by MCE. The complaint contains no allegations that Plaintiff opposed the denial of the use of his walker or that MCE refused to hire him at the textile plant because of any such opposition. Thus, this Court will also dismiss Count III against MCE without prejudice.

### E.  Count IV Against MCE

Defendants next argue that Count IV must be dismissed as to MCE because it receives no federal funding and therefore is not subject to the Rehabilitation Act. The Rehabilitation Act provides, in pertinent part:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(2) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency or by the Unites States Postal Service.

29 U.S.C. § 794(a).

> The Rehabilitation Act defines "program or activity" in pertinent part as:

> [A]ll of the operations of . . . the entity of such State or local government that distributes such assistance and each such department or agency (and each other State or local government entity) to which the assistance is extended, in the case of assistance to a State or local government . . . any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b)(1)(B).

The complaint alleges that MCE received federal funding while Plaintiff was incarcerated at ECI and RCI in the form of expenditures from the Coronavirus Aid, Relief, & Economic Security Act and American Rescue Plan Act of 2021. ECF 86-1 at ¶ 15. The complaint further alleges that MCE is a state agency and receives funding from DPSCS, a department of state government that receives federal funding. *Id.* at ¶¶ 15–16. Through these facts, which this Court must assume to be true for purposes of the motion to dismiss, Plaintiff has sufficiently alleged that MCE constitutes a "program or activity receiving Federal financial assistance." This Court will therefore deny the motion to dismiss as to Count IV against MCE.

F. Equal Protection Claim

Defendants next argue that Plaintiff fails to allege a viable equal protection claim. In this claim, Plaintiff alleges that he was excluded from work and special project assignments based on his disabilities and that able-bodied inmates did not suffer such exclusion *Id.* at ¶¶ 142–43. Plaintiff alleges that he was capable of performing each job and special project program to which he was assigned, including the sanitation detail that involved no work responsibilities. *Id.* at ¶¶ 142, 146.

19

To state a viable equal protection claim, a plaintiff must allege that he has been treated differently from other similarly situated individuals and that the different treatment resulted from purposeful discrimination. *Martin v. Duffy*, 858 F.3d 248, 252 (4th Cir. 2017). When equal protection challenges arise in a prison context, a court must determine whether the disparate treatment is "reasonably related to [any] legitimate penological interests." *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Defendants argue that Plaintiff has failed to allege that he was treated differently from other similarly situated individuals because he alleges only that he was treated differently from able-bodied inmates. Defendants thus appear to assert that disabled inmates and able-bodied inmates cannot be similarly situated as a matter of law. But determining "whether parties are similarly situated is a fact-intensive inquiry." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006). "Disabled and nondisabled detainees may be similarly situated in some instances." *Pierce v. County of Orange*, 526 F.3d 1190, 1225 (9th Cir. 2008); *see also More v. Farrier*, 984 F.2d 269, 271 (8th Cir. 1993) (concluding that inmates who required use of a wheelchair were similarly situated to those who did not for purposes of in-cell cable service).

Defendants rely on *Fauconier v. Clarke*, but in that case the Fourth Circuit rejected an argument similar to the one Defendants make here. In *Fauconier*, upon returning from a hospitalization, the plaintiff had to reapply for his job and was rejected from it. 966 F.3d at 271. He alleged that he had been treated differently from other inmates who, like him, had returned from hospitalization but remained able to perform their jobs. *Id.* at 278. The defendants argued that those other inmates were not similarly situated because they had a different medical status from the plaintiff, but the court rejected this argument and concluded that the plaintiff had stated a viable equal protection claim. *Id.*

As the plaintiff in *Fauconier* alleged that his medical status did not prevent him from performing his job, Plaintiff here has alleged that his disabilities do not prevent him from performing the work at issue. And as the Fourth Circuit in *Fauconier* rejected the argument that comparison to inmates with a different medical status necessarily destroyed the equal protection claim, this Court rejects Defendants' argument that Plaintiff's comparison to inmates with a different disability status dooms his claim at this stage. This Court will therefore deny the motion to dismiss Plaintiff's equal protection claim.

G.  Eighth Amendment Claim

Defendants further contend that Plaintiff has failed to state a viable Eighth Amendment claim. The Eighth Amendment requires that prison officials provide "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A claim based on this requirement must satisfy both an objective and subjective prong. *See Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015). The objective prong requires a plaintiff to demonstrate that the conditions posed "a substantial risk of serious harm." *Id.* (quoting *Farmer*, 511 U.S. at 834). The plaintiff need not allege that he actually suffered the serious harm; rather a showing of risk suffices because "[a]n inmate enduring such conditions need not await his near-certain [injury] before filing suit." *Brown v. Dep't of Pub. Safety and Corr. Servs.*, 383 F. Supp. 3d 519, 545 (citing *Helling v. McKinney*, 509 U.S. 25, 33–34 (1993)). The subjective prong requires that the official acted with "deliberate indifference to inmate health or safety." *Makdessi*, 789 F.3d at 133 (quoting *Farmer*, 511 U.S. at 834). The plaintiff therefore must show that the official acted or failed to act despite knowledge of the substantial risk of serious harm. *Farmer*, 511 U.S. at 842. Knowledge may be inferred "from the very fact that the risk was obvious." *Id.*

Plaintiff alleges that at ECI, his cell lacked a "high-tower" toilet that reduces the risk of falling during use and lacked any safety bars for some time, and although some were eventually installed, they were "very small" and not ADA-compliant. ECF 86-1 at ¶¶ 49, 71. He alleges that at RCI, his cell was too small to allow him to ambulate using his walker, lacked any safety bars, and lacked a "high-tower" toilet. *Id.* at ¶ 71. He further alleges that the shower facilities at RCI lacked any safety bars and featured a smooth floor that presented a falling risk when wet. *Id.* at ¶ 72.

These allegations state a viable Eighth Amendment claim. An individual with impaired balance and muscle coordination, such as Plaintiff, faces a significant risk of falling without the aid of the accommodations that Plaintiff alleges ECI and RCI lacked, and such a fall could cause serious injury. *See LaFaut v. Smith*, 834 F.2d 389, 392–94 (4th Cir. 1987) (concluding that defendants had violated the Eighth Amendment by failing to provide plaintiff with access to a toilet with safety bars that eventually resulted in plaintiff falling and breaking his leg); *see also Thomas v. Younce*, 604 F. App'x 325, 326 (4th Cir. 2015) (concluding that plaintiff had stated a viable Eighth Amendment claim by alleging that defendants continued to house him on a top bunk and top tier despite "obvious" risk of significant harm from falling off the bunk or stairs). Plaintiff has thus satisfied the objective prong.

He has also satisfied the subjective prong. Plaintiff has alleged that each of the remaining Individual Defendants named in Count VI was aware of the conditions that he faced. *See* ECF 86-1 at ¶¶ 19, 21, 23–24. Furthermore, this Court concludes that the risk Plaintiff faced under such circumstances was "obvious." *See Farmer*, 511 U.S. at 842. Plaintiff has a condition that impairs his balance and muscle coordination and requires frequent use of a walker to safely ambulate. The risk of falling to an individual with such a condition in a cell that does not allow use of a walker

or feature any safety bars or in a shower with a smooth floor and no safety bars is "obvious." Moreover, the fact that Plaintiff eventually had access to safety bars, albeit allegedly insufficient ones, in his cell at ECI and was transferred to WCI after one year at RCI does not alter this analysis; rather, the delays in accommodating Plaintiff's needs support an inference of deliberate indifference. *See LaFaut*, 834 F.3d at 393–94 (concluding that there existed "no apparent justification for the three-month delay" in "merely the simple mounting of a handicap bar" or the eight-month delay in transferring plaintiff to a facility that met his needs). Plaintiff has therefore stated a viable Eighth Amendment claim.

### H. Physical Injury

Defendants next contend that Plaintiff has failed to allege any physical injury. In their motion to dismiss, Defendants argued that Counts V and VI must be dismissed because of Plaintiff's failure to allege any physical injury. In their reply, however, Defendants appear to argue only that Plaintiff may not recover compensatory or punitive damages for the claims brought in Counts V and VI.

The PLRA places a "[l]imitation on recovery" such that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). The Fourth Circuit has not addressed whether the lack of a showing of physical injury bars suit, but other circuits have concluded that it does not and merely bars recovery of compensatory damages for mental or emotional injury. *See Dontell v. Safford*, C/A No. 9:22-cv-01641-BHH-MHC, 2024 WL 4140717, at *27 n.19 (D.S.C. June 26, 2024) (citing *Hoever v. Marks*, 993 F.3d 1353, 1360 (11th Cir. 2021) (reasoning that the title "[l]imitation on recovery" suggests that the physical injury requirement limits recovery rather than

bars suit); *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) ("[P]hysical injury is merely a predicate for an award of damages for mental or emotional injury, not a filing prerequisite for the federal civil action itself.")).

As an initial matter, this Court notes that the complaint states that Plaintiff "has sustained . . . physical injury" but contains no more specific allegations regarding that injury. ECF 86-1 at ¶ 154. Although this Court agrees with Defendants that Plaintiff could have pled physical injury with greater specificity, the lack of more specific allegations does not destroy Plaintiff's claims at this stage. Rather, this Court agrees with the reasoning of *Hoever* and *Calhoun* that § 1997e(e) merely prohibits the recovery of compensatory damages for mental or emotional injury absent a showing of physical injury. If Plaintiff ultimately fails to adduce evidence of physical injury, he will not be able to recover compensatory damages for mental or emotional injury, but for now Plaintiff may proceed on his constitutional claims.

I.    Punitive Damages

Defendants next argue that Plaintiff may not recover punitive damages under the ADA, Rehabilitation Act, or § 1983. Plaintiff concedes that he may not recover punitive damages under the ADA or Rehabilitation Act, and this Court agrees. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

A plaintiff may recover punitive damages in a § 1983 action when he demonstrates that "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The complaint alleges facts from which a jury could infer at least reckless or callous indifference to Plaintiff's rights. This Court has already concluded that Plaintiff has plausibly stated a claim under the Eighth Amendment, which involves deliberate indifference, so

he has sufficiently alleged reckless or callous indifference for the purpose of punitive damages. *See Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir. 1987) ("The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim."). Furthermore, regarding Plaintiff's equal protection claim, a jury could infer reckless indifference from the repeated reclassifications of Plaintiff's work eligibility that allegedly did not reflect Plaintiff's ability to perform particular job assignments.

Accordingly, Plaintiff's claims for punitive damages will be stricken as to his ADA and Rehabilitation Act claims but not as to his constitutional claims.

### J.  Diminution Credits

Defendants next argue that Plaintiff may not seek the award or restoration of diminution credits in this action. An individual seeking a determination that he is entitled to speedier release from imprisonment must seek such relief through habeas corpus. *Preiser v. Rodriguez*, 411 U.S. 475, 476–77, 500 (1973) (concluding that individuals seeking restoration of good-conduct-time credits must proceed under habeas corpus rather than § 1983). An individual may use § 1983 to raise a challenge to the procedure by which a prison calculates good-time credits, however. *Wolff v. McDonnell*, 418 U.S. 539, 554–55 (1974). Thus, habeas corpus displaces § 1983 only "if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005).

Through this action, Plaintiff seeks the award and restoration of diminution credits, rather than lodging a procedural challenge to the awarding of those credits. He argues that he need not proceed through habeas corpus, however, because the award and restoration of the credits would not necessarily result in speedier release. According to Plaintiff, the award of credits differs from

the application of credits. Although Plaintiff is correct that some circumstances exist in which credits awarded are not applied, none of those circumstances impact the analysis here.

Plaintiff first cites several provisions that do not apply to him. *See* Md. Code Ann., Corr. Servs. § 3-711 (preventing application of credits awarded before release on parole if parole is later revoked); Md. Code Ann., Corr. Servs. § 7-502(c) (preventing application of credits awarded before release on mandatory supervision if mandatory supervision is later revoked); Md. Code Ann., Corr. Servs. § 7-501(b) (preventing application of credits until after a person becomes eligible for parole). Plaintiff is not in custody following the revocation of parole or mandatory supervision, ECF 86-1 at ¶ 1, so neither § 3-711 nor § 7-502(c) apply. Furthermore, Plaintiff's parole eligibility date has already passed, ECF 48 at 2, so § 7-501(b) does not apply. Thus, none of these provisions would prevent the application of diminution credits to Plaintiff's sentence.

Plaintiff also cites a provision that authorizes the revocation of certain diminution credits in response to disciplinary infractions. *See* Md. Code Ann., Corr. Servs. § 3-709. Although the subsequent revocation of credits would impact an individual's eventual release date, this Court views the critical question to be whether success in this action would "necessarily demonstrate the invalidity of confinement or its duration" at the time of the action itself. *See Wilkinson*, 544 U.S. at 81–82. According to Plaintiff, absent Defendants' discrimination, he would have a release date of September 13, 2027, rather than his current release date of May 11, 2028. ECF 86-1 at ¶ 61. Thus, if Plaintiff succeeds in the award of the credits withheld and restoration of the credits revoked because of alleged discrimination, he will have demonstrated the invalidity of his current release date, regardless of whether that release date later changes because of the subsequent revocation of credits for reasons unrelated to this action.

Because the award and restoration of the diminution credits would necessarily demonstrate the invalidity of the duration of Plaintiff's confinement, he must seek such relief through habeas corpus. Plaintiff has requested leave to either amend his complaint to petition for habeas corpus or file a separate petition for habeas corpus in this Court and to mark it as related to this case. Plaintiff may not seek habeas corpus relief in this Court, however, until he has exhausted his state remedies. *Preiser*, 411 U.S. at 489. Accordingly, the requests for the award and restoration of diminution credits will be stricken from the complaint.

### K.  Qualified immunity

Finally, Defendants argue that the Individual Defendants sued in their personal capacities are entitled to qualified immunity. In arguing that qualified immunity applies, however, Defendants only repeat their arguments that the complaint fails to allege personal participation by certain Defendants and fails to state claims under the Equal Protection Clause or the Eighth Amendment. This Court has already addressed these arguments, and because Defendants have failed to offer any arguments regarding why the Individual Defendants are entitled to qualified immunity even if the claims against them may otherwise proceed, this Court will deny the motion to dismiss on qualified immunity grounds.

## IV.  CONCLUSION

For the reasons stated above, Defendants' partial motion to dismiss, ECF 92, is granted as to all claims against Defendants Scruggs, Gardner, Brittingham, Golliday, and Gorsuch; as to all claims brought against Defendants in their official capacities; as to Counts II and III against MCE; as to the claims for punitive damages under the ADA and the Rehabilitation Act; and as to the claims for the award or restoration of diminution credits, and is denied as to all other claims. Because this Memorandum Opinion references an exhibit filed under seal, the Opinion will also

be filed under seal. The parties are directed to confer and file a proposed redacted opinion for public filing within one week of the date of this Opinion. If the parties do not do so, this Opinion will be unsealed. A separate Order follows.


Dated: October 27, 2025                                    _____/s/_____

                                                          Stephanie A. Gallagher
                                                          United States District Judge